QUESTION:
Does a business operating under a lease on federal or Seminole Indian Reservation land have to abide by and operate under all state statutes, and, if so, what would be the enforcing office?
SUMMARY:
A business operating under a lease within the boundaries of an Indian Reservation in this state must comply with all Florida Statutes, because such statutes are applicable within the boundaries of said reservations and are enforceable there in the same manner as elsewhere throughout the state, insofar as they do not conflict with federal laws.
In answering a similar question in AGO 072-403, I noted that pursuant to a cession of authority under federal legislation the Florida Legislature enacted s. 285.16, F.S., which provides:
"(1) The state of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of actions between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations. (2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state." (Emphasis supplied.)
It is clear from the language italicized above that the Florida Statutes are applicable within the boundaries of all Indian reservations in this state and are to be enforced there in the same manner as they are enforced in any other part of the state. Thus, a business operating a mobile home park under a lease within the boundaries of an Indian reservation is subject to the provisions of Chs. 83 and 320, F.S., to the same extent as it would be if the mobile home park were located elsewhere within the state. Accord: Attorney General Opinion 062-156, holding that operators of drive-in theaters located on lands leased from the Seminole Tribe of Indians in Florida are liable for the payment of state and county occupational taxes.
It should be noted, however, that although the foregoing is applicable with respect to all activities of non-Indians on Indian reservations, in cases involving the actions of individual Indians or Indian tribes, questions of federal law may arise. As noted in Maryland Casualty Company v. Citizens National Bank of West Hollywood, 361 F.2d 517 (5th Cir. 1966), cert. den., 385 U.S. 918, at p. 520:
"The paramount authority of the federal government over Indian tribes and Indians is derived from the Constitution, and Congress has the power and duty to enact legislation for their protection as wards of the United States.
From the beginning of our government, Indian nations or tribes have been regarded as dependent political communities or nations; and as possessing the attributes of sovereignty, except where they have been taken away by Congressional action. They are quasi-sovereign nations.
Indian nations, as an attribute of their quasi-sovereignty, are immune from suit, either in the federal or state courts, without Congressional authorization."
Also see: Seminole Tribe of Florida, Inc. v. Courson,183 So.2d 569 (2 D.C.A. Fla., 1966).
Thus, as noted in conclusion in AGO 072-403,
". . . the laws of the State of Florida govern criminal offenses committed by or against Indians or other persons within Indian reservations and civil causes of actions between Indians or other persons or to which Indians or other persons are parties arising within such reservations, insofar as said laws do not conflict with federal laws in which instance the federal laws supersede the state law."